1

2  DARRELL L. COCHRAN
   (darrell@pcvalaw.com)
3  KEVIN M. HASTINGS
   (kevin@pcvalaw.com)
4  Pfau Cochran Vertetis Amala PLLC
   911 Pacific Ave., Ste. 200
5  Tacoma, WA 98402
   Tel: (253) 777-0799
6

7  *Attorneys for Plaintiffs*

8

9

10

11                   UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
12                          AT TACOMA

13 | K.H., as guardian for her minor daughter
   | D.H.; K.H, individually; and G.H.,
14 | individually,

15 |                          Plaintiffs,          NO.

16 |         vs.                                   COMPLAINT FOR FOR FEDERAL
                                                   CLAIMS UNDER 42 U.S.C. § 1983 AND
17 | OLYMPIA SCHOOL DISTRICT, a public             TILE IX
   | corporation; FREDERICK DAVID
18 | STANLEY, individually; BARBARA                Demand for Jury Trial
   | GREER, individually; WILLIAM V.
19 | LAHMANN, individually,

20 |                          Defendants.

21

22         COMES NOW Plaintiffs, by and through their attorneys Darrell L. Cochran, Kevin M.

23 Hastings, and the law firm of Pfau Cochran Vertetis Amala PLLC, to bring a cause of action

24 against the defendants, and allege the following:

25

26

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# I.    INTRODUCTION

1.      In August of 2005, the Olympia School District (the "District") hired a man named Gary Shafer to be a new bus driver.  He was 26 years old, unmarried, no children, and no experience in bus driving, but he proclaimed his "love of children" as a sound basis for his employment.  The District Transportation Director at the time, Fred Stanley, conducted an interview of less than thirty minutes, made no reference checks, made no checks with past employers, made no initial criminal checks but hired him nonetheless.

2.      The position of bus driver in the District calls for a bus driver to spend hours alone with the school children, including many children who are a young as four and in their formative years of communicating thoughts and events.  Shafer is now in prison for molesting school girls who were the youngest and most vulnerable at the District.  Shafer has admitted to sexually molesting at least 30 District children and will neither "admit nor deny" his victim count could be 75 children or more.

3.      Between 2005 and 2011, the District knowingly allowed its employee Gary Shafer to climb aboard hundreds of midday bus routes for pre-kindergarten, kindergarten, ad special needs children in the district, and then "ride along" with girl passengers. As another district driver drove the school bus, Shafer was allowed to ride along on buses that transported the Districts most vulnerable students. The District has repeatedly confirmed that it never had a reason to distrust a bus driver's motivation for devoting unusual attention to small girls on buses and did not care why Shafer wanted to ride along with the girls on those buses.

4.      The District had no legitimate purpose for allowing Shafer to ride along and sit with these vulnerable girls: They did not pay Shafer to carry out work assignments on the buses, they did not assign any tasks for which he could legitimately volunteered, they did not

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

track the times, dates or buses in which he rode along, nor did they ever question Shafer or the drivers about what Shafer had been doing on the buses with these young girls. Shafer was an unmarried, twenty-six year old man without children of his own who started spending all of his free time riding along on school buses without pay so he could interact with four and five year old girls, including special needs students with learning or speech delays.

5.      The District and its administrators were deliberately indifferent in their disregard for what Shafer was doing with the girls on the buses. The District knowingly allowed Shafer unfettered access to identify helpless girls, then to groom and sexually molest kindergarten, pre-kindergarten, and special needs children while they were riding to and from school on the midday bus. A number of bus drivers in the District knew Shafer was sitting with the young girls, giggling with the girls, tickling the girls, and violating long standing industry and common sense codes of conduct for bus drivers and small girls on buses.

6.      The District and its administrators decided against putting in place policies and procedures to ensure that only those assigned to drive the bus were on the bus, which directly caused an unreasonable danger of Shafer. Compounding the matter, the former Transportation Director Fred Stanley and Former Transportation Training Coordinator Barbara Greer knowingly allowed Shafer to ride along on whatever bus he wanted, regardless of whether he had an educational purpose to be there. Stanley and Greer ignored challenges to whether Shafer should be riding along on the buses and also ignored concerns that Shafer had begun changing his own bus routes at an alarming pace, alarming for the potential Shafer was changing routes because of confrontation with students he had been grooming and molesting on his own assigned routes.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

7.     The District's acts and omissions demonstrate a deliberate indifference to the rights of the children riding on those school buses. At the time of Shafer's employ, the District knew based on longstanding literature that child molestation was a major threat to students. By March 17, 2010, the District was even given a presentation by its risk management company, Canfield, showing that bus drivers constituted 12 percent of the total number of sexual assaulters within the school context – a shocking number given the relatively small number of bus drivers compared to teachers and administrators.

8.     The District and its administrators ignored the literature and statistics that children, particularly on buses, were at risk of being sexually abused. The District and its administrators also ignored glaring red flags that Shafer was harming children, including, notice from a concerned parent that a bus being driven by Shafer was over 30 minutes late and his daughter came home refusing to ride the bus; notice from drivers that Shafer would pullover his bus for no reason during the middle of routes; notice that he would sit on buses with children in his lap; notice that he was constantly changing bus routes; and notice that he was watching pornography in the breakroom. The District's misconduct as alleged in this complaint was done in deliberate indifference to the safety and well-being of children.

## II.     PARTIES

9.     Plaintiff D.H.    Plaintiff D.H. is a minor sexual abuse victim.  At all relevant times, D.H. was a resident of Thurston County, Washington.

10.     Plaintiff K.H.    K.H. is the legal guardian and mother of Plaintiff D.H.  At all relevant times, both K.H. was a resident of Thurston County, Washington.

11.     Plaintiff G.H.    G.H. is the legal guardian and father of Plaintiff D.H.  At all relevant times, G.H. was a resident of Thurston County, Washington.

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

12.     <u>Defendant Olympia School District</u>.  Defendant Olympia School District is a public corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees.  The District has its primary place of business in Thurston County, Washington, and is subject to the provisions of Title 28A of the Revised Code of Washington.  At all times material, the District operated, and otherwise exercised control over, the public schools within the District, for the benefit of the school-aged children residing in Olympia School District.  The District is responsible for all conduct of its agents and employees with respect to the attendance of D.H. at school in the District and as a bus passenger.  At all relevant times, the District had supervision and control of D.H. in loco parentis.

13.     <u>Frederick David Stanley</u>.  Defendant Fred Stanley was the District's former Transportation Director during all relevant times. Defendant Stanley is being sued in his individual and official capacity for his actions under color of state law.

14.     <u>Barbara Greer</u>.  Barbara Greer was the District's former Training Director during all related times, a responsibility that included dispatching for special needs transportation routes. Defendant Greer is being sued in her individual and official capacity for her actions under color of state law.

15.     <u>William Lahmann</u>.  Defendant William V. Lahmann was the District's former Superintendent during the 2001 to June 2012 time period.  Defendant Lahmann is being sued in his individual and official capacity for his actions under color of state law.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

## III.    JURISDICTION AND VENUE

16.    <u>Jurisdiction</u>.    Subject matter jurisdiction is predicated on federal question jurisdiction (28 U.S.C. §1331 and § 1343) due to claims under 42 U.S.C. §1983, and supplemental jurisdiction under 28 USC §1367.

17.    <u>Venue</u>.    Venue is proper in this district under 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district, in Thurston County.

## IV.    FACTS

18.    <u>Facts; Hiring of Shafer and Deliberate Indifference to Child Safety.</u> In August-September 2005, the District, through its agents Stanley and Greer, conducted a 30 minute interview of Shafer and hired him later that day without checking references or past employers. Shafer's past employers included a security company, where he was caught with pornography on his work computer, and the United States Marine Corps, where he was dishonorably discharged for lying. During his interview, he said that he would make a good bus driver because he "love[s] [] children" and because he "like[s] being around kids." His goal was to "get to know the kids." When asked whether he was prepared to accept the responsibility for the lives of the students on the bus, he said, "yes, kind of scary." The District and its agents, including Defendants Stanley and Greer, then allowed Shafer to drive school buses alone on several occasions before his background check was cleared, done with deliberate indifference to the safety and welfare of children and done in direct violation of Washington law.

19.    <u>Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley.</u> Beginning right away, Shafer asked former Transportation Director

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Fred Stanley whether he could volunteer to ride along with other drivers on their midday kindergarten, pre-kindergarten, and special needs routes because he liked being around the kids so much, especially the District's most vulnerable. Stanley gave Shafer permission to ride along, and then by permission and acquiescing, gave Shafer complete authorization for his ride alongs, later claiming that he never had reason to distrust Shafer's motivations for wanting to ride along with the vulnerable children.  Under Stanley's blanket permission, Shafer was able to ride along on hundreds of school buses whenever and wherever he wanted. Stanley never assigned Shafer to these rides, never checked on what he was doing on these rides, never kept track of how often or with whom he was riding, and never spoke to any driver about what Shafer was doing during these ride alongs. Furthermore, Shafer was never paid for his hundreds of ride alongs or for helping to manage the kindergarten, pre-kindergarten, and special needs passengers; instead, the Stanley allowed Shafer to do it because he was deliberately indifferent to the danger he created in doing.

20.   Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley and the District.   Former Transportation Director Fred Stanley admitted that Shafer was not supposed to be on buses without specific authorization from him and an educational purpose, and yet he did not institute any controls, create any policies, or enforce any existing rule to ensure that Shafer was not riding along on kindergarten, pre-kindergarten, and special needs routes without authority and an educational purpose. As he has previously testified:

Q    Right.  Did you express clearly, to all of the drivers in the Olympia School District transportation department, that they should not allow a grown man, whether he was an employee or not, get on the bus without express authorization and an educational purpose for being on the bus?

A    I would say maybe no, because it was happening.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Q       And in that way, your training, policies, and practices, failed to control Gary Shafer, right?

A       Yeah. In looking back on it, probably, yes.

Q       At the time you should have been looking at that, right?

A       Well, I had no reason to be looking at it.

                    *                    *                    *

Q       Did you create a policy, after Gary Shafer started riding around on buses, to let drivers know that he had to have authorization and an educational purpose to be on their buses in the midday?

                    *                    *                    *

A       No.

21.     <u>Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley and the District.</u> In addition to never creating a policy, Fred Stanley did not do anything to see what Gary Shafer was doing on the dozens of buses he was riding around on. As he testified:

Q       With respect to the ride-alongs that he was doing in each and every year, 2005-2006 and every year leading up to his suspension in January of 2011, what did you do to check in to see what Gary Shafer was doing all those times that he was riding along on these midday kindergarten, pre-K, and special needs buses?

A       Nothing.

                    *                    *                    *

Q       For example, did you ask them whether he was sitting with kindergarten girls on the bus?

A       No.

        Did you ask him whether he was sitting in the front right passenger's seat by himself?

A       No.

Q       Did you ask them if he was tickling them on the seats?

A       No.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Q    Did you ask if he was sharing jokes on his phones with the kindergarten girls?

A    No.

Q    Did you ask him if he was really serving in a purpose in being on the bus other than just to be there?

A    No.

＊          ＊          ＊

Q    Because, ultimately, you didn't care about the reason he was on the bus, right?

A    No.

22.    <u>Facts; Deliberate Indifference of Transportation Director Fred Stanley.</u> Stanley has repeatedly testified that he had "no reason to be looking" at what Shafer was doing because he "trusted" all of his drivers for having passed a background check. Stanley deliberately ignored the potential danger presented by his driver's conduct even though he knew that drivers had historically engaged in inappropriate behavior, including sexual harassment and physical abuse. Stanley's practice in knowingly allowing Shafer to ride along on school buses for no reason and without an educational purpose was done in complete disregard for the known and obvious consequence that Shafer would abuse children.

23.    <u>Facts; Shafer's Grooming Tactics to Identify Children Victims and the District's Danger Creation and Deliberate Indifference.</u> In an effort to coordinate his access to young girls, Shafer used several tactics. He would use the ride alongs to identify his targets among the kindergarten, pre-route or keep riding along with his victims on buses being driven by other drivers who would allow him as an unauthorized guest. Shafer frequently and often abruptly changed his driving assignments, either looking for victims or escaping potential problems he created by molesting children on his buses. In total, he switched routes a record 18 times over five-and-one-half years, including one abrupt change asking for a route change

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

and then announcing he was leaving for a trucking job. Compared to other divers, who would change routes at most a few times over decades, Shafer's pattern of changing routes was an obvious red flag. Shafer would sexually abuse girls, including D.H., while riding along with another driver without an official purpose, or he would sexually abuse them by pulling the bus over or arriving at stops early so that he would have down time with the girls. He took full advantage of Defendant Stanley's "open door" ride along policy that directly created the danger of allowing him to access the young girls on other drivers' kindergarten, pre-kindergarten, and special needs routes.

24.    Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. Shafer had been driving his assigned route when, in November 2006, he suddenly put in for a route change and then announced that he would be leaving for a higher-paying job as a long-haul trucker. He told many bus drivers that he was having financial problems and needed more money. The reality was that he abruptly changed from a special needs bus route because over concerns over getting caught for sexual abuse. Even though he successfully completed the trucking program at the top of his class, Shafer left the trucking work immediately and returned to the bus barn to work part-time for the District. In Shafer's own words, "I was going to be doing long haul truck driving starting last winter but I decided not to for various reasons even though it would have been a lot of money."

25.    Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. When confronted by a fellow bus driver about why he left his long haul trucking job despite his money woes, Shafer told his co-workers that he returned as a part-time school bus driver because he missed contact with children. From this incident and others, Shafer's fellow bus drivers found him very strange and unusually interested in children. He was being



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

described as "odd" by at least one school counselor and was reportedly observed viewing child pornography on a bus barn computer by a fellow driver. Shafer has also admitted and has been seen by other bus drivers pulling his bus over to the side of the road or in parking lots for no apparent reason. At least one driver raised concerns with the administrative office about Shafer being parked for no apparent reason during a route. Even Fred Stanley himself has admitted that he confronted Shafer about pulling over his buses for no reason.

26.    Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference.    In 2008, it is understood that a kindergarten boy went home one day after school and told his mother that the school bus driver was making farting noises, tickling he and another student, and otherwise horsing around with them while on the bus.  The boy told his mother that the driver pulled over the school bus to engage in these activities and that they were the last two on the bus.  The mother was concerned about the bus driver's behavior and conduct.  A short while later, the boy said that the same bus driver again pulled stopped the bus and was horsing around with he and another kindergarten aged boy.  At this point, it is understood that the concerned mother called the District Transportation Department and told them about the bus driver's inappropriate behavior while driving her son to and from school. The bus driver was Gay Shafer.  The District and its agents did nothing.

27.    Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. In the fall of 2009, McLane Elementary School bus driver Karen Nelson became ill and the District used sub drivers to cover the route. Shafer began targeting kindergarten girls for abuse on the route by riding along with various sub drivers. He also drove the bus as a substitute bus driver. On one occasion that he was driving, Shafer dropped off a young girl

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

who as so shaken by the experience that she told her dad, Kevin Gearheart, that she never wanted to ride the bus again.

28.    <u>Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference.</u> Mr. Gearheart called the District Transportation Department about concerns that a male substitute driver was dropping his kindergarten daughter off alone, a half-hour late, and so traumatized that she refused to ride the bus any longer. Despite the father's deep concerns and repeated calls, the District downplayed any potential for wrongdoing and performed no investigation; it simply reiterated that all bus drivers receive background checks, and therefore, there was no need to do anything further. Tragically, after Shafer's molestation surfaced in 2011, Mr. Gearheart immediately recognized Shafer's face as the driver who had left his daughter traumatized from the bus. He confronted the District about Shafer's presence on the bus, but the District lied and said that Shafer never drove that bus.

29.    <u>Facts; Red Flags and the District's Danger Creation and Deliberate Indifference.</u> District employees discussed these "red flags" but nothing was done to monitor or investigate Shafer. By ignoring evidence that Shafer was acting inappropriately, including actual reports that Shafer was inappropriately touching and otherwise engaging in peer-to-peer activities with children on the school bus, commonly known as sexual grooming, as well as ignoring evidence of Shafer's obsessive fixation on routes for kindergarten, pre-kindergarten, and special needs children, the District acted with deliberate indifference toward the safety of children in its custody and control, including Plaintiff D.H., and interfered with their education.

30.    <u>Facts; Sexual Abuse of D.H. and the Defendants' Continued Deliberate Indifference Towards the Danger they Created.</u>    In the fall of 2010, Shafer employed his



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

targeting and grooming strategy on many routes, including a special needs bus that served the McKenney Elementary pre-school program. The minor plaintiff, D.H., was a passenger on that bus. Shafer drove the bus as a substitute on multiple occasions and rode along as an unauthorized passenger.   It was on this bus that he sexually abused D.H. on multiple occasions.

31.    Facts; Sexual Abuse of N.L. In late December 2010, the Thurston County Sheriff's Department received a report that Olympia School District bus driver Gary D. Shafer sexually assaulted a kindergarten girl named N.L. on a bus driven by fellow bus driver Mario Paz. Shafer was riding along with Paz to "learn the route" and had the kindergarten girl in his lap while seated behind the driver. Shafer sexually abused N.L. while she was in his lap, and N.L. disclosed the abuse to her mother, who in turn contacted the District.

32.    Facts; Shafer's Admitted to Molesting Scores of Children at the District. In or around March 21, 2011, Shafer was hoping to obtain a reduced criminal sentence through Washington's Sex Offender Special Sentencing Alternative ("SOSSA"). As required by SOSSA, Shafer had to submit to a psychosexual evaluation, where he needed to admit to his past sexual deviancies and then take a polygraph. During this evaluation, he admitted to sexually abusing literally dozens of little girls while they were riding to and from school on the bus; Shafer identified some of his minor victims by their full name, some by a physical description, and some by their first name; Shafer admitted to targeting kindergarten, pre-kindergarten, and special needs bus routes since the start of his employment with the District; Shafer admitted to regularly spending unpaid free time riding along on others' buses to groom and assault children and no one from the District ever confronted him or prevented him from accessing children in this fashion; Shafer admitted to pulling his own buses to the side of the

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

road to molest young girls on his bus; Shafer admitted to detaining young girls in his bus after arriving to destinations early; Shafer admitted to accessing pornography on the District bus barn's computers on a regular basis without the District ever tracking, logging, or confronting him about it; Shafer admitted to masturbating in the bus barn and on the busses; and finally, Shafer admitted to photographing, videotaping, and sexually assaulting up to 30 young District students while working in his capacity as an Olympia School District bus driver.

33.    Facts; Shafer Admissions to Molesting D.H.    In sworn testimony, Shafer admitted to molesting D.H. on several occasions.    Based on his own statements, Shafer's abuse of D.H. included digitally touching her genitals, as well as licking them on at least one occasion.

34.    Facts; Danger Creation and the Deliberate Indifference Toward the Children on School Buses. Despite clear evidence of Shafer's widespread sexual abuse on school buses, the District has continuously denied any responsibility, asserting that it had no reason to distrust any of its bus drivers. The District's former Transportation Director, Fred Stanley, recently claimed that "[t]here's no reason for a bus driver not to sit with children. . . . We hire good people and everybody has been background checked and we have no reason not to trust our employees."  This alarming attitude was the milieu that allowed Shafer unlimited access to abuse scores of children on school buses.  This attitude disregarded known red flags with Shafer, known literature on the risks that sexual molesters are among the ranks of bus drivers, and ultimately, the known or obvious consequence that Shafer would abuse children given the opportunities created.  The resulting harm as complained of in this complaint was due for no other reason than the affirmative danger that Defendants created in this lawsuit by knowingly



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

allowing Shafer to have unlimited access to ride alongs and other opportunities to sexually groom and molest children.

35. <u>Facts; Deliberate Indifference to the Welfare of Children.</u> When the factual verifications of Shafer's molestations began circulating, and people began to push for answers as to how it all happened Transportation Department Director Fred Stanley refused to entertain the possibility that Shafer would have molested the children and sent a chilling threat to the bus drivers:

> These rumors [about Shafer] are slanderous and the people spreading them could and I feel should be charged with a crime and prosecuted to the fullest extent of the law. If you are one of those spreading this information and I hear it, I will report it to the proper authorities and I want to encourage those that have told me they are highly offended by this kind of behavior to do the same.

36. <u>Facts; Danger Creation, Deliberate Indifference, and Giving Shafer Unrestricted Access to Molest Children.</u>  The District's former Transportation Training Coordinator, Barbara Greer, endorsed Stanley's statements. She stated that the District has not adopted a policy regarding where male bus drivers riding along must sit alone because "we trust our drivers, and we trust their judgment." Greer added, "[after the arrest hit the news] our role was to be supportive of . . . the drivers because we knew that the drivers were going to be very upset." When asked whether common sense would have advised bus drivers to be mindful of obvious signs of grooming and risky situations, Greer replied, "I don't deal in common sense, sir."

37. <u>Facts; Danger Creation, Deliberate Indifference, and Giving Shafer Unrestricted Access to Molest Children.</u> Former District Superintendent William Lahmann, the official ultimately responsible for the safety of the children at the time of the abuse, also admitted to blind and unsupported faith in the District's entire group of bus



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

drivers, even if at the expense of children. When challenged whether bus driver Mario Paz acted appropriately in a situation where multiple girls on his bus were sexually assaulted by his friend Shafer in the seat immediately behind his, Lahmann responded, "I don't know what he did or didn't do, so my belief is that he was acting responsibly. I haven't heard otherwise. . . . I make the assumption that he acted properly."

38.    Facts; Danger Creation and the Deliberate Indifference of Defendant Lahmann and Defendant Greer. Former Superintendent Lahmann and former Transportation Coordinator Greer were complicit in Stanley's decision to allow Shafer unrestricted and unmonitored access to ride alongs. Lahmann has previously provided sworn testimony that there was no reason not to allow Shafer unrestricted an unmonitored access. Greer previously testified that there was no reason to distrust Shafer. Their complicity created a perilous situation for D.H. and was done in disregard to the known or obvious consequence that Shafer would sexually groom and molest them.

39.    Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District, Stanley, Greer, and Lahmann failed to properly train its employees on how to recognize obvious signs that Shafer was using school buses to molest young vulnerable girls. In 2006, the Washington Office of Superintendent of Public Instruction distributed a statewide publication entitled "What every employee must be told in school districts," a publication concerning the warning signs of sexual grooming of children. District bus drivers did not receive training on this publication or the information contained within it.

40.    Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. Later, in the spring of 2010, the school year before Shafer was arrested for his molestations, the District's superintendent, Defendant Lahmann, and other District administrative-level



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

personnel received professional boundaries training. This training included a valuable PowerPoint presentation on awareness of the dangers school personnel pose as potential child molesters, and included slides emphasizing that District employees had to "be on guard" regarding the behavior of their fellow District personnel, "even though they're school employees who have gone through background checks." In particular, one of the slides stated that 12 percent of *all* school-related molestation charges each year involved school bus drivers, even though they comprised a relatively small percentage of the total number of District employees. Another slide was entitled "Five-Step process" and discussed sexual grooming behaviors of which District employees needed to be aware. One of the steps consisted of identifying a vulnerable child and engaging that child in peer-like involvement. Other steps identified by the slide were desensitizing the child to touch and isolating the child in out-of-sight spots.

41.    <u>Facts; Creation of Danger, Deliberate Indifference, and Lack of Training.</u> But in an act of deliberate indifference toward the safety of children on school buses, the District and its top administrators, including Defendant Lahmann, chose against providing the valuable boundary invasion training to District bus drivers. The District specifically chose not to train its employees on the PowerPoint presentation or the information contained therein because it "felt people would reject some of the negativity of the message." Instead, the District developed a one-page "pyramid" that lacked the specific and valuable information contained within the PowerPoint presentation, such as the risk of child molestation posed by certain groups of school personnel, and its plan was to train the District's Transportation Director, Fred Stanley, on boundary invasions so that he could then implement a training for the bus drivers. But in another act of deliberate indifference toward the safety of children on



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

school buses, Stanley and his assistant knowingly skipped the watered-down boundary invasion training, and it was never brought to the transportation department. Compounding matters, Lahmann failed to follow-up with the various departments to ensure that his trickle down plan was working, another act of deliberate indifference. The District failed to train its bus drivers on even this obtuse "pyramid" until after Shafer's arrest. According to one veteran District bus driver, Dale Thompson, knowing that 12 percent of school personnel molesting children were bus drivers would have been useful because he otherwise "couldn't imagine" and would not suspect a fellow bus driver of committing such an act.

42. <u>Facts; Creation of Danger, Deliberate Indifference, and Lack of Training.</u> Similarly, the District adopted a "professional boundaries" policy in spring of 2010 but failed to advise bus drivers that any such policy existed. The policy's stated purpose was to "provide all staff, students, volunteers and community members with information to increase their awareness of their role in protecting children from inappropriate conduct by adults." The policy defined "[i]nappropriate boundaries" as "acts, omissions or patterns of behavior by a school employee that do not have an educational purpose and result in abuse." It also provided, "All employees and volunteers will receive training on appropriate staff/student boundaries." But like the earlier ignored training sessions on sexual molestation, District bus drivers never received these policies or procedures or any training on them before Shafer was arrested for sexual molestation.

43. <u>Facts; Creation of Danger, Deliberate Indifference, and Lack of Training</u>. The District brushed aside the importance of training school employees on understanding that a molester's best camouflage is a school district's unwillingness to see him. This is particularly



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

alarming in light of the research of leading commentators, who teach that accepting that molesters may lurk in our midst is crucial to preventing child abuse:

> Many educators do not believe that a colleague could sexually exploit a student. They believe that if such abuse happens, it happens in some other community and it is so rare and idiosyncratic that it does not warrant attention. Many believe that educators already know they should not have sexual relationships with students. Consequently, some are insulted when they are required to attend training on this issue. Unfortunately, it is just such attitudes that have created the educational climate that allows sexual abuse to continue.

Shoop at 63. By failing to properly train employees, the District and the individually named defendants herein who were responsible for training drivers created a climate that allowed Shafer's sexual abuse to continue.

44.    Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District and its agents, including Defendants Stanley, Greer, and Lahmann acted with deliberate indifference toward the safety of its students, including D.H., by failing to adequately train, monitor, or supervise bus drivers by ensuring that they all understood how to spot the signs of grooming behaviors, professional boundary invasions, or other red flags of sexual abuse.

45.    Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District's employees did not receive crucial training on how to spot molesters. District administrators received "boundary invasion" training in the spring of 2010, which taught about the significant danger of school personnel molesting children and included statistics about the specific danger presented by bus drivers. Despite the considerable value in this training, as Defendant Lahmann acknowledged, District officials became deeply offended by the notion that District might include child predators. District officials thought that the presentation was "negative" and refused to train District employees on the subject of



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

boundary invasions. Defendant Fred Stanley skipped the boundary training, and Defendant Lahmann did nothing to ensure that he was trained or brought the valuable boundary invasion information to the Transportation Department.

46.     <u>Facts; Deliberate Indifference to the Welfare of Children.</u>     Despite clear evidence of significant sexual abuse by Shafer, the District has made little effort to locate and identify 30 or more other children who were sexually abused on its school buses.

47.     <u>Facts; Danger Creation, Deliberate Indifference, and Lack of Policies and Procedures.</u> The District and its agents, including Defendants Stanley and Lahmann, acted with deliberate indifference toward the safety of its students, including D.H., by failing to promulgate, issue and enforce appropriate policies and procedures concerning ride alongs and reporting sexual abuse. Instead, as explained above, the defendants here did nothing to ensure that Shafer was riding along on school buses for legitimate, approved school purposes; did nothing to track his ride along behaviors; and did nothing to otherwise prohibit his unbridled access to groom and sexually abuse the District's most vulnerable population.

48.     <u>Facts; Proximate Cause and "State-Created Danger."</u>     Defendants Stanley, Greer, and Lahmann acted with deliberate indifference to the frequency in which Shafer was riding along on school buses without pay and without an official purpose, deliberate indifference to the risk that pedophiles posed to children on school buses generally, deliberate indifference to the red flags that Shafer was a threat to children, and deliberate indifference to ensuring that is bus drivers were properly trained on how to spot molesters.  As a result of this widespread and alarming deliberate indifference, these individual defendants created the danger that pedophiles like Shafer would have unrestricted access to sexually abuse minors on school buses, which here resulted in the sexual abuse of four-year-old D.H.

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX

Page 20 of 25



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

49.    <u>Damages</u>.  As the proximate result of the deliberate indifference to the health and safety of minor sexual abuse Plaintiff D.H., as set forth above, in violation of her Ninth and Fourteenth Amendment rights, Plaintiff suffered from mental anguish and emotional distress.  Plaintiff D.H. also suffered damages from being denied the benefits of an education as provided by 20 .S.C. § 1681, *et seq*.

50.    <u>Punitive Damages</u>.    Defendants acted with callous indifference and with reckless disregard of Plaintiffs' constitutional rights.

# V.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS
### AS TO STANLEY, GREER, AND LAHMANN
### (42 U.S.C. § 1983)

51.    <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, Defendants Stanley, Greer, and Lahmann are liable for compensatory and punitive damages for their creation of an actual, particularized danger that Plaintiffs D.H. would be sexually abused by Shafer, done in deliberate indifference toward the safety and wellbeing of D.H., including these defendants' failure to protect the minor plaintiff from sexual abuse and exploitation by a serial pedophile while she was riding a school bus to and from school, and for these defendants' deliberate indifference toward identifying her as sexual abuse victim and reporting the abuse to authorities and to the victims' parents, all done in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT II
## VIOLATION OF CIVIL RIGHTS - *MONELL*
## AS TO THE DISTRICT
## (42 U.S.C. § 1983)

52.    <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in failing to promulgate, issue, and enforce appropriate procedures and policies concerning (1) the reporting of known or suspected sexual abuse of D.H., and (2) the safe transport of its students including D.H., who suffered sexual abuse and exploitation as a direct and proximate result of the District's failures and as a result of deliberate indifference to her wellbeing and safety, as well as for its actions in failing to adequately train, monitor, or supervise its drivers to ensure the safe transport of its students, including D.H., all in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

## COUNT III
## VIOLATION OF TITLE IX
## AS TO THE DISTRICT
## (20 .S.C. § 1681, *et seq.*)

53.    <u>Title IX.</u> Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in creating and/or subjugating Plaintiff D.H. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), when the District and its officials had actual knowledge of the sexual assaults of D.H. created by its failure to supervise Gary Shafer and protect children, and when the District and its officials failed to take immediate, effective remedial steps to resolve the sexual harassment and instead acted with deliberate indifference toward Plaintiff D.H. and other similarly situated students, the result of which was to exclude

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Plaintiff from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

**COUNT III**
**SPOLIATION**
**AS TO ALL DEFENDANTS**

54.     <u>Spoliation.</u> Based on the paragraphs set forth and alleged above, the District and its agents had a duty to preserve evidence related to the sexual abuse of Gary Shafer and yet intentionally took steps to destroy and/or suppress critical evidence of sexual abuse and Gary Shafer's misconduct, hindering Plaintiffs' ability to prove facts in this action.  The evidence was destroyed or suppressed in an effort to lessen the risk that the District and its agents would face in this trial and other companion cases, the result of which has caused significant prejudice to Plaintiffs and has given rise to the need for a rebuttable presumption or an inference with regard to the spoliated evidence.

# VI.     RESERVATION OF RIGHTS

55.     <u>Reservation of Rights</u>.  Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

# VII.     JURY DEMAND

56.     <u>Jury Demand</u>.  Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

# VIII.     PRAYER FOR RELIEF

57.     <u>Relief</u>.  Plaintiff respectfully requests the following relief:

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

A.   That the Court award Plaintiff appropriate relief, to include all special and general damages established at trial;

B.   That the Court impose punitive damages under any provision of law under which punitive damages may be imposed;

C.   That the Court award costs, reasonable attorneys' fees, and statutory interest under any applicable law or ground in equity, including 42 U.S.C. § 1988 and all other applicable bases for an award of attorneys' fees and litigation costs;

D.   That the Court award pre-judgment interest on items of special damages;

E.   That the Court award post-judgment interest;

F.   That the Court impose a sanction for the spoliation of evidence, either in the form of a rebuttable presumption or a negative inference with regard to the evidence;

G.   That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

H.   That the Court enter such other and further relief as the Court may deem just and proper.

//

//

//

//

//

//

//

//

COMPLAINT FOR FEDERAL CLAIMS UNDER 42
U.S.C. § 1983 AND TITLE IX

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1

2    Dated: June 21, 2016

Respectfully submitted,

3                                 By:     /s/ Darrell L. Cochran       

4                                         Plaintiffs' Attorney

5                                 By:     /s/ Kevin M. Hastings       

6                                         Plaintiffs' Attorney

7    DARRELL L. COCHRAN
     (darrell@pcvalaw.com)

8    KEVIN M. HASTINGS
     (kevin@pcvalaw.com)

9    Pfau Cochran Vertetis Amala PLLC
     911 Pacific Ave., Ste. 200

10   Tacoma, WA 98402
     Tel: (253) 777-0799

11

     4848-7732-5101, v. 2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com